CASE No. 901.

PFEIFER & CO. v. DARGAN.

1. Under an assignment for the benefit of such creditors of assignor as shall establish their claims within a time limited, and agree to receive their dividends from the assigned estate in full discharge of their demands, and which excludes from its benefits all creditors neglecting or refusing to comply with these conditions, the whole of the assigned estate is applicable to creditors who do so comply, to the extent of their debts proven.

2. A concluding clause in such assignment to the effect that dividends otherwise applicable to creditors neglecting or refusing to accept the provisions of the assignment, shall remain in the hands of the assignee, subject to such order as the court may make regarding the same, was not intended to apply to such creditors as failed, through their own fault or neglect, to comply strictly with the requirements of the previous conditions.

3. Although such conditions are permitted rather than favored, the courts cannot, in the construction of a subsidiary clause of such assignment, resort to implications which are not necessary, and which would conflict with the express terms of the main body of such instrument.

Before KERSHAW, J., Sumter, June, 1879.

This was an action brought by Charles M. Pfeifer & Co., in their behalf alone, against Herman Schwerin on an acceptance in favor of Charles M. Pfeifer & Co. and against John W. Dargan, assignee, under a deed executed by Schwerin for the benefit of his creditors.

The complaint prayed judgment against Schwerin for the amount due on said acceptance, and that the defendant Dargan might be decreed to satisfy the same out of the funds then in his hands derived under said deed. There was no further prayer.

The deed of assignment from Schwerin to Dargan was put in evidence. It transferred the entire estate of Schwerin to Dargan, "to and for the following uses and purposes, and none other," to wit:

"In trust that he, the said John W. Dargan, (in conjunction with the agent, if any, to be appointed by my creditors,) shall sell the said stock of goods, wares and merchandise and store

fixtures for cash, in such manner as he may deem most advantageous; and to collect said debts and demands due me as aforesaid as speedily as possible, and, after deducting the commissions allowed him by law and the necessary expenses of selling said stock and collecting said demands, to pay out of the moneys arising therefrom, in equal and ratable proportions, to all the creditors of the said Herman Schwerin, upon notes or accounts or obligations of any character, as shall render in the same to the said John W. Dargan, and establish the same within ninety days from the date of these presents; and who shall, at the time of rendering and establishing said demands, signify and accept in writing that the dividends so to be received shall be a free and full discharge of their said claims and demands against the said Herman Schwerin; and, upon the payment of said dividends, shall grant such full and final release and discharge, hereby debarring and excluding all and every creditor of the said Herman Schwerin from any advantage or benefit whatever, under any provision of this assignment, who shall neglect for the period aforesaid, or refuse to render in and establish his, her or their demand, and signify and assent in the manner aforesaid to accept of their dividends as a full and final discharge of their claim or demand against the said Herman Schwerin.

"In case any of my creditors shall refuse or neglect to accept of the provisions of this assignment, the dividend, which would be applicable to their demands, shall remain in the hands of said assignee, subject to such order as the court may make in the premises regarding the same.

"In witness whereof I have hereunto set my hand and seal this 6th day of January, A. D. 1879.

(Signed)                    "H. SCHWERIN." [L. S.]

The defendants, Schwerin and Dargan, in their answer, denied that plaintiff had any right to or interest in the fund.

John W. Dargan, assignee, was sworn on behalf of defendants. He testified that the total amount of debts due by Schwerin was about $5000; that his creditors, to the extent of about $4500, before any dividend had been declared or paid, had assented to and accepted the terms and provisions of the deed of assignment; that some four or five of the creditors, the aggregate of whose

·debts was about $500, including the plaintiff in this separate action, had neglected and refused to render in and establish their demands, or to accept or assent to the terms and provisions of the ·deed, and had brought their separate actions against him, which are still pending; that the proceeds of the assigned estate .amounted on the whole to about $2000; that he had paid the assenting creditors up to that time about thirty-six per cent. of their demands, and the balance remaining in his hands would pay them about five per cent. more, and that they were demanding such balance; that the plaintiff in this action, as well as those who had brought their separate actions against him, had neglected or refused to accept or assent to the terms of the deed; that this balance in his hands is the dividends to which the non-assenting creditors would have been entitled had they come in under the deed, and which they are now suing him for.

The case was heard by the presiding judge, who, after finding the facts as above stated, concluded his judgment in words following:

A debtor is allowed to make an assignment of his estate upon the condition that his creditors, before receiving any portion of the same, shall be required to execute a release of all demands against the debtor. In such a case, where all releasing creditors have been paid the full amount of their respective dividends, and a surplus remains in the hands of the assignee, there results a trust to the assignor as to such surplus, unless there be some other disposition made of it by the deed. In this case the deed declares that if any creditor shall neglect or refuse to accept of the provisions of the assignment, the dividend which would be applicable to his demand shall remain in the hands of the assignee, subject to such order as the court may make regarding the same. The fund so remaining is, in equity, distributable among the unpaid creditors. *Niolon* v. *Douglas,* 2 *Hill's Ch.* 455.

It is, therefore, adjudged that the defendant, H. Schwerin, do pay the plaintiff the sum of $86.80, with interest thereon from November 13th, 1878, together with the costs and disbursements of the plaintiff herein, to be adjusted by the clerk of the court

and inserted in this judgment, and that the plaintiff have execution therefor against the said H. Schwerin.

That the defendant, John W. Dargan, as assignee, do pay from the fund remaining in his hands as such, the *pro rata* share of the same to which the plaintiff is entitled under the principles of this decree, as hereinbefore declared, first deducting from the entire fund his costs and disbursements, as one of the defendants herein, to be adjusted by the said clerk; the sum so paid to be credited on the judgment of the plaintiff herein.

That any other creditor of the fund entitled under the principles of this decree to a share therein, may apply, at the foot of this judgment, for such order as may be necessary to secure his rights in the premises.

Dargan, the assignee, appealed, upon the following grounds:

1. Because his Honor erred in not dismissing the complaint as to John W. Dargan, assignee.

2. Because his Honor erred in decreeing that the plaintiff had any interest in or right to the fund in the hands of the assignee, or any part thereof.

3. Because his Honor erred in not decreeing that plaintiff should release his demand according to the terms of the deed, upon receiving a *pro rata* share of the fund derived thereunder.

4. Because his Honor erred in converting plaintiffs' complaint into a creditor's bill, and decreeing that any other creditor might apply under that decree for any necessary order to secure his rights in the fund.

*Messrs. Moise & Lee*, for appellant.

*Mr. J. H. Earle*, contra.

August 6th, 1880.   The opinion of the court was delivered by

WILLARD, C. J.   The only matter presented by the appeal in this case, is the construction of an insolvent debtor's assignment for the benefit of releasing creditors.   The question is whether, by the terms of the assignment, the whole proceeds of the assigned estate were to be distributed among such creditors as

proved their debts in a certain time, and agreed to release, in accordance with the condition attached to the assignment, to the extent necessary to satisfy the debts due to them by the assignor. If such is the proper construction of the instrument of assignment, the plaintiff is not entitled to recover in this action, as the whole fund is insufficient to satisfy the releasing creditors, and the Circuit judgment is erroneous.

But the plaintiffs, who are the respondents, contend that by the terms of the assignment the releasing creditors can only receive their ratable share of the assigned estate, estimating, for the purpose of ascertaining that proportion, the whole amount of the indebtedness of the estate, and that such proportion of the assigned estate as would have gone to the non-releasing creditors, had they consented to release, according to the terms of the assignment, is a fund undisposed of, and, accordingly, subject to the claims of creditors generally. The Circuit Court sustained the claim of the plaintiffs and gave judgment accordingly.

The assignment, after transferring the estate to an assignee, proceeds to declare the trusts upon which the same is made, and directs that so much of the proceeds thereof as shall be available for that purpose shall be paid " in equal and ratable proportions to all the creditors of the said Herman Schwerin, upon notes or accounts or obligations of any character, as shall render in the same to the said John W. Dargan, and establish the same within ninety days from the date of these presents; and who shall, at the time of rendering and establishing said demands, signify and accept, in writing, that the dividends so to be received shall be a free and full discharge of their said claims and demands against the said Herman Schwerin ; and, upon the payment of said dividends, shall grant such full and final release and discharge."

The assignment then proceeds to exclude from its benefits all creditors who shall neglect or refuse, within the prescribed time, to establish their demands and signify the consent previously provided for.

Considering this part of the assignment independently of the concluding clause of the instrument, under which the point of difficulty has arisen, it is clear that the intention was to divide the whole estate among a certain class of creditors, namely, such

as should prove their demands and signify the requisite consent within the time prescribed. The direction to divide, ratably, among "all of the creditors" * * * "as shall render," &c., can receive no other construction than that the rate of distribution was to be established with reference alone to the class provided for, consisting of such as could prove their debts and signify the proper consent in due time. It is presumably the intention of the assignor, in assignments of this class, that his whole estate shall go to such creditors as he choses to prefer, to the extent necessary to satisfy their demands against him. The motive of the creditors in releasing is, ordinarily, to gain an advantage over non-releasing creditors, or, what is equivalent, to prevent releasing creditors from gaining such advantage over him. That advantage usually consists in the fact that releasing creditors generally take the whole estate, if necessary, to satisfy their demands. There is nothing in that part of the assignment, already considered, that indicates a different intention from that just mentioned as usually characteristic of assignments of this class.

Unless the remaining clause of the assignment has the effect to fix on the instrument a different intention, that already stated must stand as its clear purpose.

The assignment concludes as follows: "In case any of my creditors shall refuse or neglect to accept of the provisions of this assignment, the dividend which would be applicable to their demands, shall remain in the hands of said assignee, subject to such order as the court may make in the premises regarding the same." The direct sense of this clause is that the assignee shall not apply that portion of the estate which would have been the share of non-releasing creditors in the event that they had complied with the condition of the assignment without the aid of the court. The proper recipients of this part of the estate were not pointed out in this clause, therefore there is nothing in its direct effect to conflict with the designation of such persons made in the former part of the instrument.

Is there a necessity for extending this direct sense of this clause in the manner contended for? If there is such a necessity it must be created by the instrument itself. In the first

D

place there is no *hiatus* in the expression of the intention of the assignment, to be supplied constructively, as the previous portion of the instrument had fully declared the trusts in that respect. In the next place, the clause under immediate examination can take full force and effect, without any enlargement by implication. There is a clear purpose that can be ascribed to it, sufficient to account for its introduction. It might well be that creditors entitled to prove their debts and signify their consent to release might be prevented from so doing without fault or neglect on their part and under circumstances which would raise an equity for them to be let into the benefits of the arrangement notwithstanding the want of strict compliance with the express requirements. As the provisions that deprive the non-releasing creditors of an interest in the proceeds of the assigned estate are in the nature of a forfeiture, and, as such, equity might, in a proper case, relieve against them, it was eminently prudent to enable the assignor to demand the aid of the court in ascertaining the existence of such forfeiture and not compel him at the peril of risk and expense to pre-judge such questions. It is evident, then, as neither the instrument at large nor the particular clause under consideration make any demand for the enlargement, by implication, of the sense of that clause, having full and complete operation without it, there is neither reason nor justification for so doing.

Nor is there any reason for a resort to implication arising from the fact that conditional preferences, having a compulsory effect upon creditors, are rather permitted than favored. If the instrument left a doubt of its intention, the effect of favor or disfavor might make a difference in the character of the inferences drawn to supply such doubt; but disfavor is no ground for injecting into an instrument that which is not demanded by its language or fair import. To go to the extent of raising out of a clause, subsidiary to the main purpose of the instrument, an implication not demanded by such clause, which shall have the effect to unsettle the express terms employed in that part of the instrument, the office of which is to create the trusts, is not warranted by the principles of construction, and, if defended on the ground of disfavor for such assignments, would place the

principle of favor and disfavor in the light of an arbitrary power of dispensation.

The construction that has just been placed upon the assignment is in harmony with the presumable intent of the assignor. He would not, as we must assume from the nature of the condition of the assignment, have annexed the condition except as affording a motive for releasing. If, then, the releasing creditor could get no more by releasing than he would get by equal division among all creditors without any condition annexed, he has no motive for releasing. A construction that would destroy the motive for releasing would destroy the purpose of the condition, and cannot be ascribed to the mind of the assignor, nor does it result from the principles of law, for, as held in this state, they permit the use of such conditions in the assignment of insolvent debtors.

It must be concluded that it was the intention of the assignment that the proceeds of the estate, available for that purpose, should be divided ratably among such creditors as are entitled to be regarded as having complied with the condition of the assignment, and, consequently, the Circuit decree must be set aside and the cause remanded for further proceedings in conformity with the principles hereinbefore laid down.

McIver and McGowan, A. J.'s, concurred.